UNITED STATES *v.* G. R. KIRK CO., F. W. MYERS & CO.

No. 5636.—Invoice dated Newcastle, N. B., November 29, 1937.
Entered at Port Huron, Mich., December 4, 1937.
Entry No. A1212.

Second Division, Appellate Term

(Decided May 13, 1942)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellees.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is an application for a review of a decision of Brown, Judge, rendered August 14, 1941 (Reap. Dec. 5387), which involved the question of the dutiable value of two carloads of Christmas trees imported from Canada, and which were entered at the port of Port Huron, Mich., on December 4, 1937.

The trees were of various sizes running, according to the invoice, from 2 to 3 feet to 12 feet in length. A definite number of trees of a particular size were tied together into a bundle or bale. Those measuring 2 to 3 feet in length were tied 8 to a bundle or bale; those 3 to 4 feet in length, 6 to a bale; and so on to the 12-foot trees which were packed separately.

The trees were entered at a unit value of 40 cents per bale, plus tags and staples, as invoiced, with a notation on the invoice reading: "tags and staples (American goods returned)."

The bales or bundles containing the two smallest-sized trees, those measuring 2 to 3, and 3 to 4 feet, were appraised at 40 cents per bale packed. The bales containing the larger-sized trees, those from 5 to 6 and up to the 12-foot trees were advanced in unit value by the appraiser to 60 cents per bale, export value, packed.

It is contended by the importers that there should have been no advance, and that the entered values irrespective of the number of trees in each bale, more than represented the export unit value packed.

At the first hearing, held at Tacoma, Wash., on July 31, 1939, before Keefe, Judge, the plaintiffs offered in evidence the testimony of J. Ridgway Kirk, the sole owner of the importing firm of G. R. Kirk Co., who testified that he had been importing Christmas trees from Canada for the last 20 years, and during the last 4 years from

Nova Scotia and New Brunswick; that the trees which he purchased in Nova Scotia and New Brunswick were fir balsam trees, and were personally imported and sold by him in New York City and Philadelphia; that the small trees imported in 1937 were packed 6 trees to a bundle, each tree being individually tagged by means of a staple, samples of which tags and staples are in evidence as illustrative exhibit 1.

On cross-examination the witness testified that the first time he saw the trees at bar was in January, 1938, in Chicago, and that the tags were left on the trees when sold.

On redirect examination the witness testified that the bundles of trees at bar were sold direct to retail stores in the United States in many cases; that a store has the privilege of returning trees that are not sold, credit being given for the same; and that the tag is necessary for the purpose of identifying the trees not sold as belonging to the importers.

On recross-examination the witness testified in part as follows:

By Mr. WEIL.

R. X Q. The trees involved in this importation, two to three feet in length, how many of those did you have in a bundle?—A. We had 8 in a bundle.

R. X Q. And how many 3 to 4 feet in length?—A. 6.

R. X Q. And 5 to 6 feet?—A. 4.

R. X Q. And 7 to 8 feet?—A. 3.

R. X Q. And 9 to 10 feet?—A. 2.

R. X Q. And 12 feet?—A. 1.

At the close of the testimony it was agreed that the witness might be recalled for further cross-examination if the Government so desired.

Counsel for the plaintiffs then offered in evidence an affidavit executed by one J. I. Hollandsworth of Philadelphia, the said affidavit having been signed in Maine on July 25, 1939, and related to certain Christmas trees purchased by G. R. Kirk Co. in the Province of New Brunswick during the year 1937. On objection by counsel for the Government, the affidavit was refused admission in evidence by the trial judge. Subsequently 3 pages of said affidavit were admitted in evidence as exhibit 4.

Counsel for the plaintiffs then offered in evidence an affidavit executed on July 24, 1939, by one Roby S. Crandall before a notary public in the Province of Nova Scotia, the said Crandall having been in the employ of G. R. Kirk Co. in 1937, and having had charge of the purchasing of Christmas trees in that area, which affidavit was admitted in evidence as exhibit 2, over objection of counsel for the Government.

In this affidavit, the affiant, Roby S. Crandall, among other things, testified that under his supervision during the months of November and December, 1937, on behalf of G. R. Kirk Co. he purchased in Nova Scotia Christmas trees at the following prices:

| Bales Purchased | Price per Bale | Delivery | Condition |
|---|---|---|---|
| 798 | .35 | Roadside | Baled |
| 95 | .30 | Roadside | Baled |
| 390 | .33 | Roadside | Loose |
| 3 | .36 | Roadside | Baled |
| 9998 | .40 | Loaded in cars | Baled |

that during November and December, 1937, trees identical with those purchased by G. R. Kirk Co. were bought in Nova Scotia and shipped to the United States by other dealers, namely: J. Hofert of Los Angeles; R. S. Henninger of Nova Scotia, and others; that the said J. Hofert purchased and shipped to the United States trees which had been tied in the same type of bundles as those purchased by G. R. Kirk Co., but that the trees shipped by the other dealers were not tied into bundles of the same type, each bundle containing approximately 25 to 100 per centum more trees; that for this reason the prices paid by the other dealers were higher than those paid by G. R. Kirk Co., due solely to the fact that the bundles purchased by said firms contained 25 to 100 per centum more trees than the bundles purchased by G. R. Kirk Co.; and that if such trees had been purchased as single trees rather than as bundles of trees the two prices would have been the same.

At the second hearing, held in New York on April 30, 1940, also before Keefe, Judge, the plaintiffs offered in evidence the testimony of J. I. Hollandsworth who testified that for the last 3 or 4 years he had been purchasing Christmas trees in New Brunswick for G. R. Kirk Co.; that in supervising the purchase of said trees he used a form of contract, a sample of which was admitted in evidence as exhibit 3; that the original contracts executed in 1937 had been in his possession, but that after the season was over he had destroyed them; and that the prices paid for Christmas trees in New Brunswick, which were similar to those purchased in Nova Scotia during the winter of 1937, were as follows: 25 cents per bale loose at the side of the road, and 30 cents per bale when tied; that the trees were baled as follows:

Trees 2½ to 3½ feet high 8 to a bale
Trees 3½ to 5½ feet high 6 to a bale
Trees 5½ to 7½ feet high 4 to a bale
Trees 7½ to 9½ feet high 3 to a bale
Trees 9½ to 11 feet high 2 to a bale
Trees 12 feet high 1 to a bale

that the witness arranged for the hauling of the trees in trucks to the railroad at a cost of approximately 7 cents per bale; that the place of shipment was Newcastle, New Brunswick; that the witness furnished the twine for tieing the trees and the tags for tagging them; that among other parties buying Christmas trees in Canada in 1937 were J. Hofert and George L. Rowalt, both of whom purchased trees in the same manner as did the witness, but that their bales contained more trees, in

some cases the number of trees in a bale being twice as many of the same size as those purchased and imported by G. R. Kirk Co.; that the witness has personally seen Christmas trees imported from Nova Scotia and that they were similar in all respects to those purchased in New Brunswick; that during 1937, to the best of his knowledge, there were no trees being purchased in New Brunswick other than those imported into the United States; and that such trees were freely offered to all purchasers at the prices paid by G. R. Kirk Co.

Three sheets giving the data of sales of Christmas trees in New Brunswick in corroboration of the witness' testimony, were admitted in evidence as plaintiffs' exhibit 4, over objection of counsel for the Government.

At the third hearing, held at Detroit, Mich., on December 13, 1940, the Government offered in evidence the testimony of Archie McKenzie, acting appraiser of merchandise at the port of Port Huron, Mich., for the past 2 years, previous to which time he was clerk assisting the appraiser, who testified that he had passed the importation of Christmas trees involved in the instant case; that based upon his 20 years' experience examining the importations of Christmas trees from Canada there were two standards of weight of the bundles in which the trees were imported, one from 40 to 75 pounds, and the other from 80 to 100 pounds; that during the year 1937 he passed upon 50 to 60 carloads of Christmas trees imported by eight different importers; that G. R. Kirk Co. imported during the season of 1937 from 1 to 15 carloads; that the price per bundle shown on the invoices of the importers other than G. R. Kirk Co. was 60 cents per bundle; that this price was irrespective of the number of trees in a bundle of trees from 5 to 12 feet in height; that the unit of appraisement is the bundle which contains all the way from 1 to 8 trees; and that the weight of a standard bundle of Christmas trees is about 60 pounds.

At the conclusion of the witness' testimony, the Government offered in evidence the report of M. C. Northup, Treasury representative, dated December 2, 1937, which was admitted in evidence as collective exhibit 5, over objection of counsel for the plaintiffs. This report covers a large number of purchases of Christmas trees in New Brunswick and Nova Scotia, the information having been obtained from various persons named in said report. As stated by Judge Brown in his decision there is no sufficient detailed information to make a proper comparison with the merchandise at bar. Particularly is it true that in most of the transactions reported the number of trees packed in the bales of various sizes was not mentioned. In one instance, however, on page 8 of said report it is stated as follows:

I saw a few bundles of trees at the station in Sussex which, according to the man working on them, were owned by Wright. These trees were approximately seven to eight feet in length and the bundles contained five, six and eight trees, the butts measuring from 1½″ to 2¾″. * * *

This would seem to corroborate the evidence submitted in behalf of the plaintiffs which naturally resulted in a higher price per bale as found by the examiner.

Upon this record, both in his brief filed herein and in his oral argument before this division, counsel for the Government contends that the within appeal should be dismissed for the reason that the importers have not proved that the entered value is an export value as defined by section 402 (d) of the Tariff Act of 1930. Apparently the only reason that the appraiser found an export value of 60 cents per bale for the bales containing the larger trees was that other importers purchased and entered at a higher price than 40 cents per bale, which in our opinion is entirely explained by the evidence in the record that the other dealers put more of the larger trees in a bale than did the importers herein.

Upon all the facts and the law we find and hold that the proper dutiable export value of the bales of Christmas trees at bar is 40 cents per bale, plus tags and staples, as invoiced. The decision of the trial judge is therefore modified.

Judgment will be rendered accordingly.